# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-23890-KMM

MARC SCHAEVITZ, individually and
on behalf of all other similarly situated,

     Plaintiff,

v.

BRAMAN HYUNDAI, INC., a Florida
Corporation,

     Defendant.

_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Braman Hyundai, Inc.'s ("Defendant") Motion to Dismiss ("Motion") (ECF No. 17).  Plaintiff Marc Schaevitz ("Plaintiff") filed a response ("Response") (ECF No. 19) and Defendant replied ("Reply") (ECF No. 21).  The motion is now ripe for review.

## I.    BACKGROUND[1]

Plaintiff filed the instant suit against Defendant, alleging a violation of the Telephone Consumer Protection Act of 1991 ("TCPA").  Am. Compl. ¶ 1.  Major Advertising, LLC, on behalf of Defendant, transmitted an unsolicited pre–recorded voicemail message (the "Message") to Plaintiff's cellular telephone, which stated as follows:

> Hi, this is Rey Gordillo, General Sales Manager at Braman Hyundai of Miami.  I'm leaving you this quick voicemail to follow–up on an e-mail and a mailer I mailed

---

[1] The background facts are taken from the Amended Complaint ("Am. Compl.") (ECF No. 16) and are accepted as true for purposes of ruling on this Motion to Dismiss.  *Fernandez v. Tricam Indus., Inc.*, No. 09-22089-CIV, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009) ("On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true.").

you earlier this month regarding your current vehicle. It is in very high demand and I strongly believe I can help you trade it in and have you driving away in a newer vehicle for less than what you're currently paying. If you're interested call me back, 786-629-9633. Again, this is Rey Gordillo at Braman Hyundai, and the number is 786-629-9633. I look forward to hearing back from you, and have a great day.

*Id.* ¶¶ 43, 52.  The purpose of sending the Message was to communicate or try to get into communication with Plaintiff through Plaintiff's cellular telephone.  *Id.* ¶ 31.  Plaintiff did not provide Defendant with Plaintiff's express consent to be contacted.  *Id.* ¶ 51.

The "ringless" voicemail platform used to transmit the Message was created by Stratics Networks, Inc. ("Stratics").  *Id.* ¶¶ 4, 32.  The "ringless" voicemail technology used to transmit the Message "establish[es] a direct Internet–based computer–to–computer data connection to the respective voicemails systems of the cellular [carriers].  As part of the protocol for this data communication, subscribers' cellular telephone numbers are used to identify each voicemail box so that the pre–recorded voice messages are inserted into each voicemail box *en masse.*"  *Id.* ¶¶ 26, 29 (internal citation omitted).  The "ringless" voicemails are transmitted by essentially the same method used to transmit text messages to cellular telephones.  *Id.* ¶ 28.  Although Plaintiff does not allege that the telephone rings before the voicemail is deposited into the voicemail box, Plaintiff contends "every cellular telephone audibly alerts a consumer when a voicemail is received" in their voicemail box.  *See id.* at 2 n.3; *id.* ¶ 27.[2]

Plaintiff alleges actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  *Id.* ¶ 53.  Plaintiff also alleges that Defendant's voicemail message inconvenienced Plaintiff and disrupted his daily life.  *Id.*  Further, Plaintiff

---

[2]  Plaintiff further alleges that there are similarities between the method for transmitting text messages to cellular telephones and the method for transmitting "ringless" voicemails, and that these similarities are important because consumers are entitled to the same protections for text messages as they are for voice calls to wireless numbers.  *Id.* ¶ 28.

2

alleges that "[u]nlike robocalls and text messages . . . consumers are left powerless to block 'ringless' voicemails from being transmitted to their phones," which means "a consumer's voicemail box could be rendered useless by just a handful of companies using the technology to market their business." *Id.* ¶ 30.[3]

In the Amended Complaint, Plaintiff alleges two counts for violation of the TCPA.   In Count I, Plaintiff alleges that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), by transmitting– or directing third parties to transmit–calls using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and members of a putative class without permission. *Id.* ¶¶ 67–69. In Count II, Plaintiff alleges that Defendant knowingly and willfully violated the TCPA. *Id.* ¶¶ 73–74.  Defendant moves to dismiss the Amended Complaint arguing that Plaintiff failed to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant also moved to dismiss the Amended Complaint arguing that the TCPA violates the First Amendment[4]

## II.      LEGAL STANDARD

### A.      Rule 12(b)(1)

Federal courts may not assume "hypothetical jurisdiction" by deciding a case on the merits before determining that the court has jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  Consequently, a court must consider jurisdiction on its own initiative, and a

---

[3]  Stratics "not only flaunts the ability of its technology to invade the privacy of consumers, but also consumers' inability to stop the invasion of privacy caused thereby."  *Id.*  ¶ 4.

[4]  On May 14, 2018, the United States filed a Consent Motion for Extension of Time to Intervene to Defend the Constitutionality of the TCPA.  (ECF No. 39).  This Court granted the motion for extension of time and stayed the case pending the United States' decision on whether to intervene. (ECF No. 40).  On July 13, 2018, the United States responded to Defendant's Motion to Dismiss defending the constitutionality of the TCPA ("United States' Resp.") (ECF No. 41).  Defendant filed a Reply.  (ECF No. 46).   Following this briefing, Plaintiff filed an Unopposed Motion to Reopen the Case (ECF No. 47), which the Court granted.  (ECF No. 50).

party can move to dismiss for lack of subject matter jurisdiction at any time.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject–matter jurisdiction, the court must dismiss the action.").  A court may lack subject matter jurisdiction when a plaintiff fails to bear the burden of establishing the "irreducible constitutional minimum" of standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (clarifying the contours of constitutional standing); *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (the constitutional standing doctrine "implicates [a court's] subject matter jurisdiction, and accordingly must be addressed as a threshold matter.").

Article III of the Constitution of the United States "restricts the jurisdiction of the federal courts to litigants who have standing to sue."  *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016).  To establish constitutional standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547.  "Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (internal alterations and citation omitted).  "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

"On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion–the court must consider the allegations of the complaint to be true."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  But when standing is challenged

on a factual basis at a later stage of litigation, "the plaintiff can no longer rest on mere allegations." *Bochese*, 405 F.3d at 975–76 (citation and internal quotation marks omitted).

**B.** <u>**Rule 12(b)(6)**</u>

"To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of this requirement is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When considering a motion to dismiss, the court must accept all the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citation omitted). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

**III.** **DISCUSSION**

Defendant argues that (A) Plaintiff lacks standing because Plaintiff did not receive a "call" within the meaning of the TCPA; (B) Plaintiff lacks standing to seek declaratory or injunctive relief; (C) Plaintiff did not receive a "call" within the meaning of the TCPA and therefore fails to state a claim; (D) the TCPA violates the First Amendment; and (E) Plaintiff fails to adequately allege that Defendant willfully or knowingly violated the TCPA.

**A.** <u>**Whether Plaintiff Received a "Call" Within the Meaning of the TCPA and Therefore Has Standing**</u>

The heart of this matter is whether a "ringless" voicemail is a "call" within the ambit of the TCPA. The TCPA makes it unlawful "to make any call . . . using any automatic telephone dialing

5

system [("ATDS")] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communications Commission ("FCC") is empowered to "prescribe regulations to implement the requirements of this subsection." *Id.* § 227(b)(2). The TCPA also created a private cause of action "based on a violation of this subsection or the regulations prescribed under this subsection." *Id.* § 227(b)(3)(A).

Defendant makes two arguments that Plaintiff lacks standing. First, Defendant attempts to factually attack the Amended Complaint arguing that the Amended Complaint and the declaration of Charles Jones, attached to Defendant's Motion, establish that Defendant did not make a "call." Second, Defendant argues that because a "ringless" voicemail is not a "call" under the TCPA, Plaintiff has no redressable legally protected interest and thus cannot establish standing.

i.      Whether Defendant's Attack on the Complaint is a Factual One

Defendant argues that Plaintiff lacks standing under the TCPA because Plaintiff concludes that Defendant made a "call" within the meaning of the TCPA without pleading any supporting facts to show that a "ringless" voicemail qualifies as a call. Motion at 5. Defendant also argues that the Declaration of Charles Jones demonstrates that Plaintiff lacks standing because the "ringless voicemail software connected directly to the phone company's voicemail server," the voicemail was "deposited directly into Plaintiff's voicemail box," and thus the "ringless" voicemail "bypassed any contact with the Plaintiff." *Id.* at 5–6; ("Jones Decl.") (ECF No. 17–2).

At the motion to dismiss stage when a defendant mounts a factual attack to standing under Federal Rule of Civil Procedure 12(b)(1) asserting lack of subject matter jurisdiction, a court can "consider extrinsic evidence such as deposition testimony and affidavits" and is not "constrained to view [the facts] in the light most favorable to the plaintiff." *Houston v. Marod Supermarkets,*

*Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (citation and internal quotation marks omitted). However, when the factual attack is "inextricably intertwined with the merits of the lawsuit . . . [t]he proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).

Here, Defendant's argument that a "ringless" voicemail does not qualify as a "call" within the meaning of the TCPA challenges the legal sufficiency of the allegations in the Amended Complaint. *See Silbaugh v. CenStar Energy Corp.*, No. 1:18–CV–161, 2018 WL 4558409, at *2 (N.D. Ohio Sept. 21, 2018) ("[Defendants] do not so much challenge the factual veracity of many of the alleged harms, as argue that those allegations are insufficient to state a concrete and particularized injury under the TCPA."). Because Defendant is not presenting a factual attack so much as a legal one, the Court proceeds to analyze Defendant's second argument–whether a "ringless" voicemail qualifies as a "call" under § 227(b)(1)(A)(iii) of the TCPA.

       ii.        <u>Whether a "Ringless" Voicemail is a "Call" Under the TCPA</u>

Defendant argues that Plaintiff lacks Article III standing because Plaintiff has not alleged a legally protected interest. Motion at 6–7. The TCPA prohibits entities from making "any call . . . using any [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Although the TCPA does not define a "call" and the FCC has not interpreted whether a "ringless" voicemail qualifies as a "call,"[5] one district court recently found that a "ringless" voicemail qualifies as a "call" under the

---

[5] This Court and the FCC almost had an opportunity to address whether "ringless" voicemails qualify as calls. *See Mahoney v. TT of Pine Ridge, Inc.*, No. 9:17-cv-80029-DMM (S.D. Fla. 2017). On *March 31*, 2017, the defendant in *Mahoney* filed a motion to stay based on a Petition for Declaratory Ruling (the "Petition") filed with the FCC. *See* Defendant's Motion for Stay, *Mahoney v. TT of Pine Ridge, Inc.*, No. 9:17-cv-80029-DMM (S.D. Fla. March 31, 2017), ECF

TCPA.  *See Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018) ("Dyck O'Neal's use of direct to voicemail technology is a 'call' and falls within the purview of the TCPA.").  This Court agrees.

This Court begins its analysis by interpreting the word "call" in the TCPA according to its "ordinary, contemporary, common meaning."  *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking ordinary, contemporary, common meaning.").  In *Satterfield v. Simon & Schuster, Inc.*, the Ninth Circuit examined the same provision of the TCPA stating that the dictionary definition of "call" was "to communicate with or try to get into communication with a person by a telephone."  569 F.3d 946, 953–54 (9th Cir. 2009) (quoting Webster's Third New International Dictionary (2002)).  Other courts have adopted this definition in the TCPA context.  *See Ashland Hosp. Corp. v. Serv. Employees Int'l Union Dist. 119 WV/KY/DH*, 708 F.3d 737, 742 (6th Cir. 2013) (agreeing with *Satterfield's* definition of the word "call" and finding it consistent with the purpose of the TCPA); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) (relying on *Satterfield* for the definition of "call").

Courts have also consistently held that voicemail messages containing prerecorded messages are subject to the same TCPA restrictions as traditional calls.  *See, e.g.*, *Susinno v. Work*

---

No. 33.  The Petition–which was filed by All About the Message, LLC ("AATM"), a distributor for Stratics–sought a declaration from the FCC that the "delivery of a voice message directly to a voicemail box does not constitute a call that is subject to the prohibitions on the use of an [ATDS] or an artificial or prerecorded voice" under the TCPA.  *See* FCC Public Notice No. 02-278 (Apr. 18, 2017), available at https://docs.fcc.gov/public/attachments/DA-17-368A1.pdf.  However, the parties in *Mahoney* settled before the Court addressed the instant question, *see* Notice of Pending Settlement, *Mahoney v. TT of Pine Ridge, Inc.*, No. 9:17-cv-80029–DMM (S.D. Fla. May 3, 2017), ECF No. 41, and the Petition was withdrawn before the FCC issued a ruling.  Letter in Docket–02–278 Withdrawing Petition (June 20, 2017), available at https://ecfsapi.fcc.gov/file/1062101171891/2017-06-20%20Letter%20to%20Ms.%20Dortch.pdf.

*Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (holding the TCPA provided a plaintiff a cause of action where defendant "left a prerecorded promotional offer that lasted one minute on her voicemail"); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) ("The [TCPA] . . . curtails the use of automated dialers and prerecorded messages to cell phones . . . and routing a call to voicemail counts as answering the call."); *Alvarado v. Featured Mediation, LLC*, No. 8:16-CV-3259-T-30JSS, 2017 WL 1552248, at *1 (M.D. Fla. May 1, 2017) (finding the defendant liable for violations of the TCPA where the defendant "left voicemails using a prerecorded voice"). Courts have also found that the TCPA "does not distinguish between calls that are picked up and calls that go to voicemail." *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) (holding that it was immaterial whether the plaintiff answered the defendants' calls or whether the calls went to voicemail).[6]

Additionally, although the TCPA does not expressly state that it applies to text messages, the FCC and courts have found that text messages are "calls" within the meaning of the TCPA. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016), *as revised* (Feb. 9, 2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls."). Because text messages were not available when the TCPA was enacted in 1991, courts

---

[6]  Defendant argues that a voicemail is an "information or enhanced service," as opposed to a telecommunications service, and is not regulated under § 227(b)(1)(A)(iii). Motion at 11–14. Specifically, Defendant argues that the "plain language" of § 227(b) does not extend to voicemails, which is an information service, because § 227(b)(1)(A) does not reference "information services," and instead discusses "call[s]" and "telephone number[s]." *Id.*   This Court disagrees. When voicemails are connected to a "call," as in the cases cited herein, they can be considered under § 227(b)(1)(A)(iii). *See Saunders*, 319 F. Supp. 3d at 909 n.3. Such a dichotomy equally applies to text messages, which, as discussed below, are soundly within the prohibition of § 227(b).

looked to the "purpose and history of the TCPA" to conclude that a "voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954. The FCC similarly construed the TCPA broadly to find that the prohibition against automatic telephone dialing in § 227(b)(1) "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *See, e.g.*, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14092 (2003) ("It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies.").

Here, Plaintiff alleges that Defendant employed a program that utilized "ringless" voicemails to "communicate with or to try to get into communication with" Plaintiff and other consumers "through the consumer[s'] cellular telephone[s]." Am. Compl. ¶¶ 3, 31. Plaintiff received the prerecorded "ringless" voicemail in Plaintiff's voicemail box. *Id.* ¶ 29. The fact that Defendant utilizes a computer to deposit the prerecorded voice messages *en masse* into the voicemail boxes of nonconsenting consumers is no bar to finding such "ringless" voicemails qualify as "calls" within the meaning of § 227(b)(1)(A). *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015) (The FCC recognized that the use of a computer to communicate with a cellular telephone subscriber via a text message is a covered "call" under the TCPA), *declaration set aside in part by ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).[7] Additionally, the fact that the cellular

---

[7] Defendant argues that in *ACA*, the D.C. Circuit rejected an unreasonably expansive interpretation of the TCPA that "lies considerably beyond the [FCC's] zone of delegated authority." (ECF No. 33). In response, Plaintiff argues that *ACA* concerned the D.C. Circuit's review of consolidated challenges to a 2015 FCC Order interpreting various provisions of the TCPA, including the type of equipment that constitutes an ATDS. (ECF No. 34). Plaintiff notes that as Defendant points out, the D.C. Circuit invalidated the FCC's broad interpretation of the term "capacity" in the

telephone does not ring as it traditionally would prior to the receipt of a voicemail is not significant in determining whether the act qualifies as a "call" because the TCPA does not require that "the recipient of a call . . . answer the phone or somehow be aware of the call." *See Fillichio*, 2010 WL 4261442 at *3. Rather, "it is the mere act of placing the call that triggers the statute." *Id.* As a result, "[t]he only thing Plaintiff must plead to establish a violation of the TCPA is that the Defendant[] left voicemail messages at a number assigned to a cellular telephone service using an [ATDS] or an artificial or pre-recorded voice." *Manfred v. Bennett Law, PLLC*, No. 12-CV-61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012). The "ringless" voicemail accompanied by a pre–recorded message is no less intrusive than a standard voicemail or text message–both of which have been held to constitute "calls" under the TCPA. *Murphy*, 797 F.3d at 1305 ("The prohibition against auto dialed calls applies to text message calls as well as voice calls."); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1373 (S.D. Fla. 2014) ("A text message to a cellular telephone qualifies as a 'call' within the meaning of the TCPA."); *Satterfield*, 569 F.3d at 954 ("[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy.").

A construction of the TCPA in which a "ringless" voicemail is a "call" is consistent with Congress's purpose in enacting the TCPA. "The TCPA was enacted to address certain invasive practices related to 'unrestricted telemarketing,' and is designed to protect consumers from receiving unwanted and intrusive telephone calls." *Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1276 (11th Cir. 2017). The purpose of the TCPA is to protect consumers from the "nuisance and privacy invasion" associated with unsolicited telemarketing telephone calls and fax advertisements. *See* Telephone Consumer Protection Act of 1991 Pub. L. No. 102–243, § 2, 105

---

statutory definition of an ATDS. *Id.* However, the specific finding by the D.C. Circuit regarding the term "capacity" has no bearing on this Court's decision.

Stat. 2394 (1991).  Congress specifically found that "[b]anning" such conduct "is the only effective means" of protecting consumers "from this nuisance and privacy invasion."  *Id.* ¶ 12.

Accordingly, the Court finds that the "ringless" voicemail, that is, a direct to voicemail message is a "call" under the TCPA.

     iii.      <u>Whether Plaintiff Established an Injury-In-Fact for Article III Standing</u>

Defendant argues that Plaintiff lacks Article III standing because Plaintiff has not alleged a legally protected interest.  Motion at 6–7.  However, Defendant's arguments in support of this proposition are focused on whether the "ringless" voicemail Plaintiff received qualifies as a "call" under the TCPA.  These arguments fail for the reasons set forth in Section III.A.ii.  As set forth below, Plaintiff has Article III standing because Plaintiff sufficiently alleges an injury–in–fact.

The Supreme Court recognized two independent components of an injury in fact–concreteness and particularity–and held that courts must separately assess each component.  *Spokeo*, 136 S. Ct. at 1545.  An injury in fact is "particularized" if it "affects[s] the plaintiff in a personal and individual way."  *Id.* at 1548 (citation omitted).  An injury in fact is "concrete" if it "exists"–if it is "real, and not abstract."  *Id.* (citations and internal quotation marks omitted).  A plaintiff cannot allege "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.* at 1549.  However, "'[c]oncrete' is not . . . necessarily synonymous with 'tangible' . . . [because] intangible injuries can nevertheless be concrete."  *Id.* at 1549.  Thus, the "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and "a plaintiff need not allege any *additional* harm beyond the one identified by Congress."  *Id.* at 1549.  "[W]hen a plaintiff alleges that a statutory requirement has been violated, courts must determine whether the 'violations alleged . . . entail a degree of risk sufficient to meet the concreteness requirement.'"  *Nicklaw v.*

*CitiMortgage, Inc.*, 855 F.3d 1265, 1266 (11th Cir. 2017).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotation marks omitted).

A "plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549); *see also Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1210 (11th Cir. 2018) ("[P]rinting more than five digits of a credit card number in willful violation of FACTA causes the person whose account number is disclosed to suffer a concrete injury," and "[w]hen a violation of a statute creates a concrete injury, as it does here, plaintiffs do not need to allege 'additional harm beyond the one Congress has identified.'") (quoting *Spokeo*, 136 S. Ct. at 1549).  "Both before and after *Spokeo*, courts have recognized on multiple occasions that in enacting the TCPA Congress was expressly concerned about protecting consumers' privacy rights to be free from unwanted autodialed calls." *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2016 WL 6996113, at *3 (M.D. Fla. Nov. 30, 2016). In *Osorio v. State Farm Bank, F.S.B.*, the Eleventh Circuit cited Senator Hollings, who sponsored the TCPA, describing these calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall."  746 F.3d 1242, 1256 (11th Cir. 2014) (citation omitted).  The TCPA "establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive[, and both] history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, *de*

13

*facto* injury." *Albrecht v. Oasis Power, LLC, d/b/a Oasis Energy*, No. 18cv1061 (N.D. Ill. Oct. 11, 2018); *see also Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252–53 (11th Cir. 2015) (examining the legislative history of the TCPA to find that the occupation of plaintiff's fax machine by an unsolicited fax advertisement was a cognizable right created by Congress and established a particularized and concrete injury under Article III, even though there was no evidence anyone printed or saw the faxes).

Here, Plaintiff alleges actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Am. Compl. ¶ 53.  Plaintiff also alleges that Defendant's voicemail message inconvenienced Plaintiff and disrupted his daily life.  *Id.*  Further, Plaintiff alleges that "unlike robocalls and text messages . . . consumers are left powerless to block 'ringless' voicemails from being transmitted to their phones" which means "a consumer's voicemail box could be rendered useless by just a handful of companies using the technology to market their business."  *Id.* ¶ 30.

The injuries alleged in the Amended Complaint are not mere "procedural" statutory violations; rather, they are precisely the kinds of harm the TCPA aims to prevent.  The effect on Plaintiff is the "same whether her phone rang with a call before the voicemail is left, or whether the voicemail is left directly in her voicemail box, *i.e.*, [plaintiff] receives a notification on her phone that she has a new voicemail."  *Saunders*, 319 F. Supp. 3d at 911; *Albrecht v. Oasis Power, LLC, d/b/a Oasis Energy*, No. 18cv1061 (N.D. Ill. Oct. 11, 2018) (finding that the general allegations regarding the ringless voicemail messages, although vague, are sufficient for standing because plaintiff alleged defendant called him without consent and those calls invaded his privacy).  Further, "noticing that a voicemail was left" would be intrusive for the purposes of showing an injury under the TCPA.  *Tillman*, 2017 WL 1957014, at *7 n.6.  Moreover, the injury

is traceable to Defendant's "ringless" voicemail. *See Hossfeld v. Compass Bank*, No. 2:16-CV-2017-VEH, 2017 WL 5068752, at *7, 14 (N.D. Ala. Nov. 3, 2017) (finding that a TCPA plaintiff alleged an "intrusion injury" that was "fairly traceable" to "at least one unauthorized phone call" where he alleged that the prohibited call, *inter alia*, invaded his privacy); *see also Susinno*, 862 F.3d at 348–52 (finding Article III standing existed where a TCPA plaintiff sued based on a "single solicitation" to her cellular telephone that resulted in a voicemail).  Thus, Plaintiff sufficiently alleged an injury–in–fact and Defendant's motion to dismiss for failure to allege an injury–in–fact is DENIED.

**B.**   **Whether Plaintiff has Article III Standing to Seek Declaratory or Injunctive Relief**

Defendant argues that that Plaintiff has not sufficiently alleged facts that entitled Plaintiff to injunctive or declaratory relief.  Motion at 14.  In response, Plaintiff argues that Defendant's knowing and repeated illegal conduct demonstrates a sufficient possibility that it will engage in this conduct in the future.  Response at 13.

"[A] prayer for injunctive and declaratory relief requires an assessment . . . of whether the plaintiff has sufficiently shown a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.") (citation and internal quotation marks omitted).  "The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent." *Elend*, 471 F.3d at 1207.  In other words, a plaintiff seeking "declaratory and injunctive relief . . . must demonstrate that he is likely to suffer future injury . . . at the hands of the defendant" and that "the relief the plaintiff seeks will likely prevent such injury from occurring." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–04 (11th Cir. 1991).

15

Plaintiff states that "Defendant's unsolicited prerecorded *message* caused Plaintiff actual harm." Am. Compl. ¶ 53. Plaintiff has not pleaded any allegations or otherwise shown that he, or any member of the putative class, will ever again receive another "ringless" voicemail from Defendant in the future.

Plaintiff's argument based on *Houston* does not convince this Court otherwise. The *Houston* plaintiff allegedly: (1) visited a supermarket, which was not ADA-compliant due to architectural barriers, on multiple prior occasions, (2) reasonably expected to visit that supermarket again in the near future because of his "frequent trips directly past the store," and (3) faced a 100% chance of encountering the violation if he again visited the store because there was no indication that the ADA violations had been remedied. 733 F.3d at 1336–37. The Eleventh Circuit concluded that the threat of future injury under those circumstances was "real and immediate." *Id.* at 1337. Here, there is no allegation that Defendant caused multiple "ringless" voicemails to be transmitted to Plaintiff or to class members. Moreover, Plaintiff has neither alleged nor proffered a basis from which the Court could infer that Defendant will ever again send Plaintiff or class members such "ringless" voicemails. Because Plaintiff lacks Article III standing to seek either declaratory or injunctive relief, Defendant's motion to dismiss the claim for injunctive and declaratory relief is GRANTED.

### C.   Whether Plaintiff States a Claim for a Violation of the TCPA

Defendant argues again that Plaintiff invokes a statutory label "call" without pleading any supporting facts and thus fails to state a claim. Motion at 15. Specifically, Defendant argues that the Amended Complaint establishes that the "ringless" voicemail technology transmitted the voicemail directly to the voicemail system and not to any consumer and thus no call was ever made. *Id.* at 15–16. The TCPA makes it unlawful "to make any call . . . using any [ATDS] or an

16

artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).  As discussed *supra* the "ringless" voicemail qualifies as a "call."  Plaintiff also alleges that Defendant transmitted an unsolicited prerecorded voicemail message to Plaintiff's cellular telephone number.  *Id.* ¶¶ 43, 51–52.  Plaintiff further alleges that he did not provide Defendant with his express consent to be contacted.  *Id.* ¶ 50–51.  Thus, Plaintiff has sufficiently pled a violation of the TCPA, and Defendant's motion to dismiss for failure to state a claim is DENIED.

### D.      Whether the TCPA Must be Struck Down as Violating the First Amendment

The TCPA, as amended in 2015, prohibits a person from "using any [ATDS] or an artificial or prerecorded voice" in order "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).

Defendant argues that the exception for "calls made solely to collect a debt owed to or guaranteed by the United States" (the "Government–Debt Exception") renders the TCPA in violation of the First Amendment because (1) preventing phone traffic and protecting the privacy of cellular telephone users are not compelling interests, and (2) the TCPA is not narrowly tailored to advance those interests.  Motion at 16–19.  In response, Plaintiff argues that the TCPA is content–neutral and does not violate the First Amendment.  Response at 15.  The United States also responded to defend the constitutionality of the TCPA arguing that Defendant's constitutional arguments should be rejected because (1) Defendant lacks standing to challenge the Government– Debt Exception; (2) the TCPA is a content–neutral restriction on speech; and (3) if the Court finds

that the TCPA is content–based, it should conclude that the statute satisfies strict scrutiny.  United States' Resp. at 2.

As a threshold matter, Defendant has standing to pursue a challenge to the constitutionality of the TCPA.  "[T]he requirement that a defendant possess standing is almost always satisfied by the plaintiff's claim for relief against that defendant.  After all, any defendant against whom relief is sought will generally have standing to defend due to its exposure to an adverse judgment, the threat of which is imminent."  *Sliwa v. Bright House Networks*, *LLC*, No. 2:16-CV-235-FTM-29MRM, 2018 WL 1531913, at *3 (M.D. Fla. Mar. 29, 2018), *motion to certify appeal denied*, No. 2:16-CV-235-FTM-29MRM, 2018 WL 2296779 (M.D. Fla. May 21, 2018) (quoting *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015)).  Thus, Defendant has standing to challenge the constitutionality of the TCPA.

The United States argues that Defendant's constitutional challenge should be rejected because the Government–Debt Exception is severable from the remainder of the TCPA.  United States' Resp. at 10.  Although Defendant has sufficiently alleged standing to assert a First Amendment defense, Defendant would not avoid liability if this Court found that the Government–Debt Exception violated the First Amendment because the Court would "not deem the entire TCPA to be unconstitutional because the [government-debt] exception [is] severable from the remainder of the statute."  *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1047 (N.D. Cal. 2017), *certificate of appealability granted*, No. 16-CV-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017).  The United States Supreme Court has "reaffirmed that the invalid portions of a statute are to be severed unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not."  *I.N.S. v. Chadha*, 462 U.S. 919, 931–32 (1983) (citation and internal quotation marks omitted).  Here, there is no evidence that

18

Congress would not have enacted the TCPA without the Government–Debt Exception. "To the contrary, Congress did enact the TCPA without the exception for government debt, and the version of the TCPA without the exception has been upheld as a valid time, place, or manner restriction by several courts throughout the country." *Woods v. Santander Consumer USA Inc.*, No. 2:14-CV-02104-MHH, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017).

Further, "where the challenged statute contains an unambiguous severability clause, a court need not embark on that elusive inquiry into legislative intent, since the clause itself gives rise to a presumption that Congress did not intend the validity of the Act as a whole, or any part of the Act, to depend upon whether the [challenged clause is] invalid." *Sliwa*, 2018 WL 1531913, at *5 (citation and internal quotation marks omitted). "Chapter 5 of the Communications Act of 1934, which encompasses the TCPA, includes a 'Separability' provision stating that if any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." *Id.* at *6 (citation and internal quotation marks omitted). "But even without this Separability provision (which predated both the TCPA and the Government–Debt Exception amendment), there can be no doubt that Congress would have enacted the remainder of the anti-robocall provision, irrespective of the constitutional fate of the Government–Debt Exception; Congress *did* enact the provision prior to adding that clause." *Id.*

Regardless, courts have held that the TCPA, as amended in 2015, is constitutional. *See Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1151 (D. Minn. 2017) ("[T]he Court concludes that the TCPA is a content–based restriction on speech, but the TCPA survives strict scrutiny because it is narrowly tailored to serve a compelling interest."); *See Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at **14–17 (S.D.N.Y. Aug. 1,

2017) (same); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1032–34 (N.D. Cal. 2017) (same); *Brickman*, 230 F. Supp. 3d at 1045 (holding that the "government–debt exceptions to the TCPA [are] content–based" and withstand strict scrutiny).

Thus, the Court need not determine whether the statute is content–based or content–neutral because it survives both strict and intermediate scrutiny. *Gallion v. Charter Commc'ns, Inc.*, 287 F. Supp. 3d 920, 931 (C.D. Cal. 2018) ("In conclusion, the Court finds that section 227(b)(1)(A)(iii)'s government–debt exception facially renders the TCPA a content–based restriction on speech . . . however, the TCPA furthers a compelling government interest in protecting privacy and is narrowly tailored to achieve that interest."). The TCPA serves a compelling interest. *See Mejia*, 2017 WL 3278926 at *16; *see also Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305–06 (7th Cir. 2017) ("No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious."). "Moreover, the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts." *Mejia*, 2017 WL 3278926 at *16.

A law that serves a compelling interest must also be narrowly tailored to achieve that interest. *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2231 (2015). The TCPA is limited in what it prohibits, in that it merely restricts calls made using an ATDS or prerecorded voice without first obtaining the express consent of the recipient. *See Brickman*, 230 F. Supp. 3d at 1048. The TCPA leaves open alternative avenues for Defendant to disseminate its messages. The TCPA's Government–Debt Exception is narrowly tailored permitting calls only to recipients who owe a debt to the federal government, and thus would not result in an "unlimited proliferation" of the

exempted category of automated calls. *See Greenley*, 271 F. Supp. 3d at 1150; *Holt*, 240 F. Supp. 3d at 1032; *Brickman*, 230 F. Supp. 3d at 1047–48.

Because the Court concludes that the provision survives strict scrutiny, it would necessarily also satisfy any less searching standard of review.   Accordingly, Defendant's motion to dismiss this action because of the unconstitutionality of the TCPA is DENIED.

### E.    Whether Plaintiff Pled Facts Showing Defendant Acted Knowingly or Willfully

Defendant argues that Count II should be dismissed because Plaintiff failed to properly allege that Defendant "willfully" or "knowingly" violated the TCPA.   Motion at 19–20.   In response, Plaintiff argues that a plaintiff can seek treble damages at the pleading stage by simply alleging that a defendant was aware that it placed a call in violation of the TCPA.   Response at 18.

The TCPA creates a private "action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater."   47 U.S.C. § 227(b)(3)(B).   The statute further provides that if the court finds that the defendant's violations were willful or knowing, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)." *Id.* § 227(b)(3)(C).   "The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute." *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).

Here, Plaintiff alleges that Defendant transmitted a prerecorded voicemail message to Plaintiff and members of the Class.   Am. Compl. ¶ 3.   Plaintiff alleges that Defendant "knowingly and willfully violated the [TCPA], by making [these] unsolicited prerecorded telemarketing calls in violation of consumers' privacy rights." *Id.* ¶ 1.   Further, Plaintiff alleges that Defendant "knew that it was prohibited by the TCPA from contacting consumers on their cellular telephones with

prerecorded calls, without their prior express consent." *Id.* ¶ 2. Plaintiff also alleges that Defendant "in a failed attempt to circumvent the TCPA" utilized a "voicemail technology to place calls to Plaintiff and members of the Class." *Id.* ¶ 3. Plaintiff did not give his express consent to be contacted. *Id.* ¶ 51.

Because the TCPA speaks to a remedy which may be awarded in the Court's discretion upon finding that Defendant acted "willfully" or "knowingly," it would be inappropriate at the motion to dismiss stage to exclude the possibility of the Court later making such a finding based on additional facts to support Plaintiff's allegations. *See Brown v. Account Control Tech.*, *Inc.*, No. 0:13-62765-CIV, 2015 WL 11181947, at *4 (S.D. Fla. Jan. 16, 2015) (reviewing evidence of a willful violation of the TCPA at the close of discovery and on a motion for summary judgment). Accordingly, Defendant's motion to dismiss Count II is DENIED.

## IV.     CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUGED that Defendant's Motion to Dismiss (ECF No. 17) is GRANTED IN PART AND DENIED IN PART as stated above.

DONE AND ORDERED in Chambers at Miami, Florida, this  25th  day of March, 2019.

K. MICHAEL MOORE
UNITED STATES CHIEF DISTRICT JUDGE

c: All counsel of record

22