**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:17-cv-23890-KMM

MARC SCHAEVITZ,
Individually and on behalf of
all others similarly situated,

      Plaintiff,

v.

BRAMAN HYUNDAI, INC.,
A Florida corporation,

      Defendant.

_____/

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SECOND EXPERT**

Stearns Weaver Miller Weissler
  Alhadeff & Sitterson, P.A.
Museum Tower
150 West Flagler Street
Suite 2200
Miami, FL 33130

*Attorneys for Defendant Braman Hyundai,*
*Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

ARGUMENT .........................................................................................................................12

I.      The Court Should Strike Verkhovskaya's Opinions .......................................12

        A.      Verkhovskaya's report is untimely. .......................................................12

        B.      The untimely disclosure is neither substantially justified nor harmless. ..............14

II.     In the Alternative, the Court Should Permit Braman Hyundai to Depose Verkhovskya and then Move to Exclude Her Opinions .................................16

        A.      Verkhovskaya's opinions cannot pass muster under the Federal Rules of Civil Procedure or Evidence .........................................................................16

        B.      Verkhovskaya's deposition will almost certainly establish additional reasons that her opinions must be excluded. ..........................................17

CONCLUSION.....................................................................................................................18

CERTIFICATE OF SERVICE ............................................................................................20

SERVICE LIST ...................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliati Network, Inc. v. Wannamaker,*
   2017 WL 8784850 (S.D. Fla. Aug. 10, 2017) ............................................................... 14, 15

*Brown v. Electrolux Home Prods., Inc.,*
   817 F.3d 1225 (11th Cir. 2016)............................................................................................12

*General Electric Co. v. Joiner,*
   522 U.S. 136 (1997) ..............................................................................................................16

*Jacobs v. Quicken Loans, Inc.,*
   2017 WL 4838567 (S.D. Fla. 2017)......................................................................................13

*Jetport, Inc. v. Landmark Aviation Miami, LLC,*
   2017 WL 7732868 (S.D. Fla. July 11, 2017)................................................................... 14, 15

*Oravec v. Sunny Isles Luxury Ventures, L.C.,*
   527 F.3d 1218 (11th Cir. 2008).............................................................................................15

*Reese v. Herbert,*
   527 F.3d 1253 (11th Cir. 2008)............................................................................... 11, 13, 16

*Sher v. Raytheon Co.,*
   419 F. App'x 887 (11th Cir. 2011) ......................................................................................16

*United States v. Frazier,*
   387 F.3d 1244 (11th Cir. 2004) (en banc) ...........................................................................16

*Warren v. Delvista Towers Condo. Ass'n., Inc.,*
   2014 WL 3764126 (S.D. Fla. July 30, 2014)........................................................................14

*Wilson v. Badcock Home Furniture,*
   329 F.R.D. 454 (M.D. Fla. 2018)............................................................................. 12, 13, 17

**Rules**

Fed. R. Civ. P. 16..........................................................................................................1, 15

Fed. R. Civ. P. 23.................................................................................................................2

Fed. R. Civ. P. 26...................................................................................................1, 11, 16

Fed. R. Civ. P. 30.................................................................................................................8

Fed. R. Civ. P. 37 ................................................................................................................ 1, 13

Fed. R. Civ. P. 45 .................................................................................................................... 8

Fed. R. Evid. 702 ................................................................................................................... 16

Defendant Braman Hyundai, Inc. moves under Federal Rules of Civil Procedure 16(b), 26(a), and 37(c) to strike Plaintiff's untimely disclosed expert, Anya Verkhovskaya, or alternatively, for leave to depose her after the close of discovery and submits the following memorandum of law.

## INTRODUCTION

Nearly two years ago, Plaintiff filed this proposed class action. Since then, he hasn't even tried to disclose any of the necessary expert opinions addressing the class certification issues on which he bears the burden of proof until the night of March 13—after the agreed-upon date for exchanging initial expert reports and days before the close of discovery.

Plaintiff here alleges that the receipt of a single ringless voicemail violates the Telephone Consumer Protection Act. Yesterday, this Court largely denied Braman Hyunda's motion to dismiss the operative complaint but dismissed Plaintiff's requests for injunctive and declaratory relief, explaining: "Here there is no allegation that Defendant caused multiple ringless voicemails to be transmitted to Plaintiff *or to class members*." DE 62.

Plaintiff seeks to use the alleged receipt of a single ringless voicemail as a springboard to force Braman Hyundai to pay a purported class over $30 million, but failed to establish any lawful basis for class certification in the factual discovery record here, where he seeks at least $500 for each phone number on a list of over 60,000 phone numbers (that supposedly comprise the "class").

Indeed, Plaintiff failed to take *any* class discovery. Any accurate list of potential class members could only have been generated by a third party that Plaintiff never bothered to subpoena. The data identified by Plaintiff instead contains underlying data from other third parties from which Plaintiff never obtained discovery, and, as a result, little to nothing else is known about it— the reports identified by Plaintiff are rank, inadmissible hearsay but the sole basis for the claim of over 60,000 TCPA "violations."

Because the asserted class claim suffers from these flaws, Plaintiff has desperately tried to pull an eleventh-hour "expert" disclosure. The new expert's opinions, however, are both too little and too late to salvage Plaintiff's proposed class action. By the agreed-upon deadline for mutually exchanging all "initial" expert reports, Plaintiff served only an expert opinion attempting to address liability that Braman Hyundai will separately move to exclude under the Federal Rules of Evidence. Plaintiff served no expert report addressing any certification issues.

Then, three business days before the close of all fact and expert discovery, Plaintiff's undisclosed expert—Anya Verkhoyskaya—lobbed in a so-called "rebuttal" report. She opines in essence that, using a black box of proprietary TransUnion data, she can identify a user or subscriber at some point in time for each phone number on the aforementioned hearsay list. Her report says nothing about who the actual users or subscribers were when Plaintiff alleges the ringless voicemails were actually sent and is thus cannot support certification or fend off summary judgment, let alone be admitted at any trial.

Her expert report is also an "initial" report served too late. This Court should not credit Plaintiff's labeling it a "rebuttal" to—through semantic games—try to dilute his burden to prove he has met Rule 23's certification requirements and any absent class members' claims. Its untimely disclosure threw a monkey wrench into the current schedule that Plaintiff's counsel attempted to exploit to prejudice Braman Hyundai. More specifically, Plaintiff cross-examined Defendant's expert about TransUnion information some 12 hours after serving Verkhovskaya's report; Plaintiff refused to produce Verkhovskaya's documents or Verkhovskaya for deposition by the discovery cut-off; Braman Hyundai's expert is still working to access TransUnion's black-box data; and dispositive motions are due on April 5.

This Court should strike Verkhoyskaya's opinions and refuse to consider them; in the

alternative, it should order her to sit for deposition by April 30, 2019, and permit Braman Hyundai to file a separate *Daubert* motion addressing all of the defects in her opinions 14 days later and allow Braman Hyundai to supplement any motion filings.[1]

## BACKGROUND

### A.  First Amended Complaint

On October 24, 2017, Plaintiff sued here and asserted claims against Braman Hyundai for violating the TCPA, alleging that a vendor of Braman Hyundai sent a "voicemail" to Plaintiff's cell phone. DE 1, ¶ 23. Plaintiff brought the case as a proposed class action with a class period spanning four years. DE 1, ¶ 35.

On December 13, 2017, Plaintiff filed the First Amended Complaint, which clarified that the "prerecorded" message he received was a "ringless voicemail"—a technology that does not interface with a telephone's switched network, but rather deposits a voicemail directly into the "voicemail boxes of cellular subscribers." DE 16, ¶ 26. Plaintiff continued to seek relief for a proposed class with a period spanning four years. DE 16, ¶ 55.

The First Amended Complaint identified "Stratics Networks, Inc. ('Stratics')" as the "inventor" of ringless voicemail. DE 16, ¶ 4. The First Amended Complaint also alleges that Braman Hyundai's vendor "Major Adverti[s]ing, LLC . . . transmitted" the ringless voicemail through the Stratics platform. DE 16, ¶ 43.

Yesterday, this Court largely denied Braman Hyundai's motion to dismiss the First Amended Complaint, but dismissed the requests for declaratory and injunctive relief. DE 62. This Court recognized, "there is no allegation that Defendant caused multiple ringless voicemails to be

---

[1] References to "Braman Hyundai" are to Braman Hyundai, Inc.; references to the "TCPA" are to the Telephone Consumer Protection Act; references to "Ex. __" are to exhibits attached to the accompanying Declaration of David T. Coulter. Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

transmitted to Plaintiff or *to class members*." DE 62 at 16.

**B.    The Scheduling Orders and Plaintiff's Prior Motion for Extension**

This Court's 2017 initial scheduling order required completing all fact and expert discovery by March 20, 2018, required filing all pretrial motions, including summary judgment motions, *Daubert* motions, and in limine motions by June 11, 2018, and set the case for trial starting the two-week trial period of September 17, 2018. DE 14.

On May 14, 2018, the United States asked for an extension of time to intervene to defend the constitutionality of the TCPA under the First Amendment, DE 39, which Braman Hyundai challenged in its motion to dismiss, DE 17. This Court then stayed and administratively closed the case until July 13, 2018, DE 40. On July 13, 2018, the Department of Justice filed a brief attempting to defend the constitutionality of the TCPA, DE 41, and, with leave of the Court, on July 23, 2018, Braman Hyundai filed a reply, DE 46.

On July 25, 2018, Plaintiff filed an unopposed motion to administratively reopen the case and enter an amended scheduling order. DE 47. Plaintiff requested an extension of the fact and expert discovery deadlines of 45 days, an extension of the deadline of filing of all pretrial motions until 20 days after the close of discovery, and a trial period starting at least 80 days after the pretrial motion deadline. DE 47 ¶¶ 5-7 & Ex. 1.

On October 12, 2018, this Court reopened the case. DE 50. This Court also entered a new scheduling order, which required completing all fact and expert discovery by March 18, 2019, filing all pretrial motions, including summary judgment motions, *Daubert* motions, and in limine motions by April 5, 2019, and set the case for trial starting during the two-week trial period of June 24, 2019. DE 51.

**C.    Fact Discovery**

In January 2018, Braman Hyundai disclosed Charles Jones of Major Advertising and

individuals at Alesco Data and Collective Strategies as likely to have discoverable information—for Alesco Data and Collective Strategies in particular, Braman Hyundai disclosed that the witnesses had knowledge of "ringless voicemail technology." Ex. 1. In 2018, Plaintiff served a request for production on Braman Hyundai, and Braman Hyundai timely produced documents.

Plaintiff also sought to compel Braman Hyundai to produce documents from Major Advertising. On March 20, 2018, Magistrate Judge Simonton ruled that Plaintiff should instead subpoena Major Advertising, explaining in part:

> There are no extenuating circumstances present in this case that would make requiring the Plaintiff to subpoena Major Advertising to obtain the documents he seeks exceptionally difficult or time-consuming. Major Advertising is located not only within the State of Florida, but within the Southern District of Florida, and thus there should be no difficulty in serving them with a Subpena Duces Tecum.

DE 32 at 4.

Plaintiff then issued a subpoena duces tecum to Major Advertising, and discussed setting dates for the deposition of Charles Jones of Major Advertising. After the court-ordered stay was lifted, Braman Hyundai's counsel provided dates in late November and early December for such a deposition. *See* Ex. 2. Plaintiff's counsel never set a date and never noticed the deposition.

Instead, in January 2019, Plaintiff sent a letter to Charles Jones of Major Advertising enclosing a subpoena for testimony, without copying or serving Braman Hyundai's counsel the subpoena. Ex. 3. Jones then met with Plaintiff's counsel.[2]

Jones then informed Braman Hyundai's counsel of Plaintiff's unserved subpoena for testimony. On February 26, 2019, Braman Hyundai served a notice of intent to serve subpoena on

---

[2] On February 4, 2019, Plaintiff's counsel served a Notice of Intent to Serve Subpoena on Non-Party, The Alesco Group, LLC, on Braman Hyundai's counsel to which there was no objection. Upon Braman Hyundai's request for all documents received in response to that subpoena, Plaintiff's counsel stated "We have not received any documents from The Alesco Group, LLC." Ex. 4.

Plaintiffs' counsel, seeking Jones's deposition and documents. Ex. 5. After service of Braman Hyundai's notice, Plaintiff's counsel emailed Braman Hyundai's counsel attaching documents "recently provided by Charles Jones of Major Advertising." Ex. 4. On March 1, 2019, Plaintiff's counsel served a cross-notice of intent to serve a subpoena, cross-noticing Jones' deposition and seeking additional documents. Ex. 6.

On March 11, 2019—about a year after Magistrate Judge Simonton had pointed out there were no barriers to subpoenaing Major Advertising or Jones—Jones testified at deposition. Jones, among other things, testified about the "Jones Download"—a spreadsheet of data Jones testified he had downloaded, with what appear to be over 60,000 phone numbers but containing no names, no addresses, or other information identifying the users or subscribers for those phone numbers.

The Jones Download has 5 columns and over 60,000 rows that span 1495 pages, with the same formatting throughout, and the following headings and first four rows:

| uuid | sublist_id | lead | callerid | deliver_start |
|---|---|---|---|---|
| '20171024221705-mgr0-cac700b6' | 2952278 | 5612712043 | 7866299633 | 10/24/2017 18:17 |
| '20171024221659-mgr0-fcadf086' | 2952278 | 3059520714 | 7866299633 | 10/24/2017 18:17 |
| '20171024221539-mgr8-66db628a' | 2952278 | 3056328522 | 7866299633 | 10/24/2017 18:15 |
| '20171024221544-mgr6-8eefbe07' | 2952278 | 3059346684 | 7866299633 | 10/24/2017 18:15 |

Ex. 7 at 1.

Jones testified that he created the Jones Download *after* Braman Hyundai had been sued. Ex. 8 at 201-202. He testified that, earlier in 2017, he had uploaded phone numbers provided by Collective Strategies, Alesco, and other underlying unknown sources to the Stratics platform. Ex. 8 at 131. Jones speculated that the "uuid" column in the Jones Download identified each unique record, did not know what "sublist_id" meant, testified that "lead" would be the phone number he had uploaded to Stratics provided by Collective Strategies, Alesco, or some unknown data vendor, and assumed that "deliver_start" was "[t]he day the RVM was deployed." Ex. 8 at 130-134. Jones

is not an officer or employee of Stratics and cannot provide any basis that would allow the Jones

Download to be admissible as a record of ringless voicemails made by Stratics.

Jones then testified as follows about the Jones Download:

Q.      So was this Stratics' data or was it your data?

A.      This is Stratics' data.

Q.      And to the extent we are looking at the leads, is that Stratics or Alesco?

A.      That's Alesco, or Collective Strategies, or Scott.

Q.      Okay. And did you do anything to verify the accuracy of the document[] starting
        with page 1 of 1,495?

A.      I did not.

Q.      Did you read all 1,495 pages of this?

A.      No, I did not.

Q.      Did you look through it, to see if the same lead were included multiple times?

A.      No I did not. But that could be the case, where a lead may be in here multiple times.

Q.      Did you check to see if there was any duplication, in the sense that one month's
        data was uploaded twice?

A.      No, I have not.

Q.      Have you, for other reasons or other clients, generated these reports from Stratics
        before?

A.      No, ma'am.

Q.      So this is the only report you have ever generated from Stratics like it?

A.      Yes.

Q.      Are there any other reports you have generated from Stratics?

A.      No.

Ex. 8 at 135-136.

Jones further testified that he obtained the phone numbers he had uploaded to the Stratics'

7

platform from Collective Strategies, Alesco, and other unknown sources. Ex. 8, at 39-40, 116 & 130. He testified "they never told me exactly where it comes from," but "it is just a variety of different ways that they are collecting this data." Ex. 8 at 42-43. He testified that "a lot of this data comes from double opt-in and surveys" for the leads and people that have "opted in to give that data out to marketers." Ex. 8 at 41-42. He testified that he "would say" and "assume" that the double opt-in process means that Collective Strategies, Alesco, or the other sources have prior written consents, but those third parties would have those consents. Ex. 8 at 45-46, 138-139.

Plaintiff has not identified any documents produced by Alesco. Plaintiff has never sought a deposition of, or documents from, Collective Strategies or Stratics Networks, let alone the unknown providers of data to Alesco and Collective Strategies.[3]

## D.    Expert Disclosures and Discovery

On December 3, 2018, Plaintiff served an "expert witness list" that disclosed a single expert, Randall Snyder, who opined that ringless voicemail is similar to "text messages and text-to-email messages." Ex. 9 at ¶ 9. Snyder did not address any class certification issues.

On February 7, 2019, counsel for Braman Hyundai wrote to counsel for Plaintiff, proposing a schedule for exchange of "initial reports," "rebuttal reports," and "expert depositions":

> I'm writing to propose a schedule regarding expert discovery. Please let us know if you will agree to *a mutual exchange of initial reports* on March 4, rebuttal reports on March 13, and expert depositions by March 18.

Ex. 10. On February 22, 2019, counsel for Plaintiff wrote: "We agree to the expert schedule outlined in your [February 7] email []." Ex. 10.

---

[3] It is possible that, as with the subpoena to Charles Jones and in violation of Federal Rules of Civil Procedure 30(b)(1), Plaintiff failed to serve Braman Hyundai with subpoenas for other third party deposition testimony. It is also possible that Plaintiff failed to serve Braman Hyundai with other subpoenas for third party documents in violation of Rule 45(a)(4). But there has been no indication from Plaintiff's counsel that it has sought or obtained any additional third party discovery.

On or before March 4, 2019, Plaintiff served no additional initial expert reports.

On March 4, 2019, Braman Hyundai served the initial report of its expert, Jan Kostyun. *See* Ex. 11. Kostyun opined on the many ways that ringless voicemail differs from voice calls and text messages—including the routing, delivery, and receipt, the ways they are used for communication, and the accompanying alerts and notifications. Ex. 11 at 10-20.

Kostyun also identified many barriers to identifying the historical subscribers or users for the phone numbers listed on the Jones Download as of the dates any ringless voicemails were purportedly sent (if they were):

> (1) The Jones Download contains landline telephone numbers throughout 2017 despite the platform's inability to deliver ringless voicemails to landlines until late 2017, Ex. 11;
>
> (2) Barriers to using third party vendors to match phone numbers to historic users and subscribers on the dates any ringless voicemails allegedly were sent; and
>
> (3) The limits of the discovery record here, where Plaintiff never obtained data, documents, or testimony from Alesco, Collective Strategies, the unknown marketing companies from which Alesco or Collective Strategies obtained the data, Stratics Networks, or any telecommunications carriers (except for the Plaintiff's cell phone bills), Ex. 11.

Kostyun addressed many third party vendors and sources, including skip traces, searchbug.com, spokeo.com, name directories, CompliancePoint, Interactive Marketing Solutions, LexisNexis, and Neustar. Ex. 11.

On Wednesday, March 13, 2019, at 10:07 p.m., Plaintiff disclosed the "rebuttal expert" report of Anya Verkhovskaya. *See* Ex. 12. In Part I setting forth her introduction and summary of

opinions, her report disclosed that "Plaintiff's counsel requested that I opine regarding my ability to identify wireless telephone numbers as well as names and addresses associated with the telephone numbers" contained in the Jones Download. Ex. 13. She summarized her opinion that it is "possible, common and administratively feasible to reliably identify wireless telephone numbers," "identify the names and addresses that were associated with these telephone numbers at the time of the voicemails," and "issue notice[s] of class certification." Ex. 13.

In Part III setting forth her data analysis, Verkhoyskaya's report then says she has often used information from "established and reputable data vendors, such as TransUnion, LexisNexis, and Interactive Marketing Solutions." Ex. 13 at ¶ 32. She then reviewed the Jones Download—without mentioning Jones' deposition testimony at all—and used Interactive Marketing Solutions data to try to isolate cell numbers and exclude landline numbers. Ex. 13 at ¶¶ 38-39. She then took a sample of 44,790 "unique numbers" from the Jones Download and submitted them to TransUnion, which "used its proprietary algorithm to link name and addresses to each telephone number, specifying the timeline for each match." Ex. 13 at ¶ 48. Though she says this resulted in a "Transunion Output file" that "provided at least one historical name and address for 11,967 telephone numbers," Ex. 13 at ¶ 50, Verkhoyskaya did not disclose what methodology lies behind TransUnion's "proprietary algorithm," did not disclose the output file itself, but instead just asserted it "provided at least one historical name and address" for an undisclosed set of phone numbers. Only in Part IV of her report, titled "Misstatements and Misrepresentations," does Verkhoyskaya even attempt to address Kostyun's opinions, but it too relies almost entirely on her analysis of TransUnion data.

On the morning of March 14, about twelve hours after service of Verkhoyskaya's report, Plaintiff deposed Kostyun and extensively questioned him about TransUnion data, including

whether Kostyun had ever used TransUnion to identify subscribers, the categories of TransUnion products available, the different levels of access to the TransUnion database, whether Kostyun had tested or analyzed the TransUnion database, and whether Kostyun had reviewed any disclaimers for the TransUnion database. Ex. 14 at 132, 133-136.

On March 14, 2019, Braman Hyundai's counsel emailed Plaintiff's counsel: "Please let us know as soon as possible when you will make this new expert available for deposition." Ex. 12

Having heard nothing from Plaintiff's counsel about dates for Verkhovskava's deposition, on Friday, March 15, 2019 at about 2 pm, Braman Hyundai's counsel served subpoenas for testimony and documents from Verkhovskava with the following cover email, in relevant part:

> We've received the "Expert Rebuttal Report" of Anya Verkhovskaya, which you served on Braman Hyundai on March 13, 2019, at 10:07 p.m. While the report appears intended to attempt to address class certification issues in the context of a "rebuttal," the law in the Eleventh Circuit is clear that the "party seeking class certification has the burden of proof." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (emphasis in original). Class certification issues must be (and should have been here) addressed with initial expert reports, not in the context of a "rebuttal" to which the defendant may not respond. Ms. Verkhovskaya's report is entirely improper.

> In any event, the morning after you served Ms. Verkhovskaya's report we asked for [] deposition dates. You said you would get us dates yesterday but have not done so. In light of this and the impending close of discovery, the timing we have demanded in our subpoenas—documents to be produced by this coming Sunday and the deposition to be held Monday beginning at 2:00 p.m.—is more than reasonable….

Ex. 15.

About two hours later, Plaintiff's counsel responded, offering deposition dates well after the discovery cut-off and in the last week before the motion deadline, to occur in Milwaukee, Wisconsin:

> Ms. Verkhovskaya is available on 3/28, 3/29, 4/4, and 4/5. Her preference is to have the deposition in Milwaukee where is she located. We will accept service of the subpoena.

Ex. 15.

To date, neither Plaintiff's counsel nor Verkhovskaya provided any reports or data underlying her report or any other documents that Braman Hyundai requested on March 15.

**ARGUMENT**

**I.     The Court Should Strike Verkhovskaya's Opinions**

**A.     Verkhovskaya's report is untimely.**

Federal Rule of Civil Procedure 26(a)(2) requires a party to make expert disclosures "at the times and in the sequence that the court orders." The "expert disclosure rule is intended to provide opposing parties a reasonable opportunity to prepare for effective cross examination and perhaps arrange for testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008).

Plaintiff here sued nearly two years ago, the operative scheduling order provided for the close of all discovery by March 18, 2019, and the parties agreed to exchange "initial" reports on March 4, 2018, any "rebuttal" reports by March 13, 2019, and to complete expert depositions by the court-ordered deadline of March 18, 2019. *See* pp. 3-8, above.

Verkhovskaya's report is an "initial report" addressing issues on which Plaintiff squarely bears the burden of proof. In *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016), the Eleventh Circuit explained that the Supreme Court has long held that "[t]he party *seeking* class certification has the burden of proof," and what that means:

> [T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, "the party with the burden of proof loses." *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir.1997). All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation. *See Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013); *Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940)….
>
> The district court also misstated the law when it said that it "accepts the allegations in the complaint as true," *Terrill*, 295 F.R.D. at 682 (quoting *Mazur*, 257 F.R.D. at 566), and "draws all inferences and presents all evidence in the light most favorable to Plaintiffs," *id.* at 680. The party seeking class certification has a burden of proof, not a burden of pleading. *See Halliburton Co. v. Erica P. John Fund, Inc.*, ——U.S. ——, 134 S.Ct. 2398, 2412, 189 L.Ed.2d 339 (2014). He "'must affirmatively demonstrate his compliance' with Rule 23" by proving that the requirements are "in fact" satisfied. *Comcast*, 133 S.Ct. at 1432 (quoting *Wal–Mart*, 131 S.Ct. at 2551).

817 F.3d at 1233-34.

12

Plaintiff's burden to prove that a class should be certified—grounded in United States Supreme Court precedent—was hardly a surprise.

Plaintiff's counsel also should have been well aware of how their burden would play out in a TCPA case in this Circuit. In *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454 (M.D. Fla. 2018), for example, the United States District Court for the Middle District of Florida refused to certify a proposed TCPA class because it was not ascertainable and individualized factual issues about consent predominated. Indeed, that court credited Kostyun's opinions about identifying historical cell phone users and subscribers and rejected Verkhovskaya's claim that "this is possible," where "one of her sources is the unobservable, proprietary black box techniques of LexisNexis." *Id*. And courts in this District have likewise refused to certify proposed TCPA class actions where identifying historical subscribers and users of cell phone numbers or determining consent have presented individualized factual issues, which defeat commonality or predominance.[4]

For almost two years, Plaintiff did next to nothing to establish a factual record that could support certification. As explained above, pp. 4-8, Plaintiff's counsel did not serve Braman Hyundai with a subpoena to depose Charles Jones of Major Advertising, did not seek to depose anyone at Stratics Networks, did not seek any documents or evidence from Stratics Networks, and conducted no effective discovery of any data provider related to this case. Only after Braman Hyundai noticed the deposition of Charles Jones did Plaintiff cross-notice that deposition; and only when Braman Hyundai's expert pointed out the many barriers to class certification did Plaintiff seek to provide any expert testimony on any of these class certification issues on which he bears the burden. Indeed, Verkhoyskaya's report itself sets forth opinions about identifying the historical subscribers or users for

---

[4] *See, e.g., Jacobs v. Quicken Loans, Inc.*, 2017 WL 4838567 (S.D. Fla. 2017); *Wilson*, 329 F.R.D.454 n. 6 (collecting cases).

the phone numbers on the Jones Download affirmatively before even trying (but failing) to style her new analysis as "rebuttal" (it too relies principally on black box TransUnion data and is no "rebuttal"). *See* pp. 9-10, above. Verkhovskaya's opinions are untimely and should be stricken.

**B.    The untimely disclosure is neither substantially justified nor harmless.**

Under Federal Rule of Civil Procedure 37(c)(1), the failure to disclose "all opinions" from a retained expert means that "the party is not allowed to use that information or witness to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." The Eleventh Circuit has held that an untimely disclosure that prejudices the ability to depose the expert, cross-examine the expert, and offer competing expert testimony is neither substantially justified nor harmless but rather prejudice that that warrants exclusion. *Reese*, 527 F.3d at 1264-66.

Federal courts thus "routinely strike expert reports or exclude expert testimony which is not timely disclosed," including where, as here, the offending party disclosed its expert's report only days before the close of discovery. *See, e.g., Warren v. Delvista Towers Condo. Ass'n., Inc.*, 2014 WL 3764126, *1 (S.D. Fla. July 30, 2014). For example, in *Affiliati Network, Inc. v. Wannamaker*, 2017 WL 8784850, *4 (S.D. Fla. Aug. 10, 2017), the court struck an expert witness after the party disclosed the expert "merely one day before the close of discovery." And in *Jetport, Inc. v. Landmark Aviation Miami, LLC*, 2017 WL 7732868, *7 (S.D. Fla. July 11, 2017), the court struck the plaintiff's expert witness because the plaintiff disclosed the expert "a mere three (3) days before the close of discovery." Verkhovskaya's opinions—disclosed three business days before the close of discovery and after the agreed "initial" report disclosure deadline—must be excluded. Indeed, the reasoning of these cases applies with even greater force to require exclusion here.

Plaintiff is trying desperately to use Verkhovskaya's report to save an unsalvageable $30 million class claim—the report seeks to paint a façade over a discovery record incompatible with

class certification. Verkhovskaya does not and cannot analyze the various data sources that provided leads to Charles Jones at Major Advertising; she does not and cannot identify the only proffered source data in the case that lists names and addresses (Defendant will explore those infirmities in later motions as well); and she does and cannot not analyze the Jones Download—the only, hearsay basis proffered for any asserted "class" in this case. *See* pp. 10-11, above.

This façade cannot stand. Verkhovskaya does not explain anything about the methodology underlying TransUnion's "proprietary algorithm"; she does not provide what she calls the "TransUnion Output file"; she does not provide any of the historical names and addresses contained in that file; she does not explain whether TransUnion's data was internally consistent; and she does not identify the dates on which the names were associated with the phone numbers. *See* pp. 10-11, above. Her conclusion—that TransUnion "provided at least one historical name and address," Ex. 13 at ¶ 50—says nothing about whether she has identified the historical users or subscribers on the dates the ringless voicemails were allegedly delivered.

The disclosure of that report three business days before discovery closed severely and unfairly prejudiced Braman Hyundai's ability to use traditional discovery tools to fully test her opinions and reveal all their deficiencies. Where—as here—a party's expert disclosure abuts the discovery cutoff, the other party loses its "ability to defend its case by propounding discovery or deposing [the expert]," *Jetport*, 2017 WL 7732868 at *7, and to "conduct[] additional discovery concerning" the data and opinions in the expert's report, *Affiliati*, 2017 WL 8784850 at *4.

Even worse, as explained above, p. 10, some twelve hours after serving Verkhovskaya's report, Plaintiff's counsel based much of its cross-examination of Kostyun on his knowledge of that black box proprietary software. This attempt to sandbag Kostyun and lock in an ambush before trial independently establishes unfair prejudice and that Verkhovskaya's should be excluded.

## II.   In the Alternative, the Court Should Permit Braman Hyundai to Depose Verkhovskya and then Move to Exclude Her Opinions

If this Court does not strike Verkhovskaya's opinions now, then the late service of the report provides good cause for permitting Braman Hyundai to depose her, despite the close of discovery, and to file a *Daubert* motion within 14 days after her deposition. Federal Rule of Civil Procedure 16(b) permits modification of the Court's scheduling order upon a showing of "good cause and with the judge's consent." Good cause means that "the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008).

### A.   Verkhovskaya's opinions cannot pass muster under the Federal Rules of Civil Procedure or Evidence

If her opinion is not stricken, Braman Hyundai will move Verkhovskaya's opinions after deposing her. Indeed, on the face of the report, Verkhovskaya's opinions suffer from at least two fatal defects:

*First,* her rebuttal report insufficiently discloses the reasons and bases for her opinions. Federal Rule of Civil Procedure 26(a)(2)(B) requires retained, testifying experts like Verkhovskaya to provide "a complete statement of all opinions the witness will express and the basis and reasons" therefor, "the facts or data considered by the witness in forming them," and "any exhibits that will be used to support or summarize them." Fed. R. Civ. P. 26(a)(2)(B)(i) – (iii). "Disclosure of expert testimony within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing a complete statement of all opinions and the reasons therefor." *Reese*, 527 F.3d at 1265. As explained, pp. 9-10, above, Verkhovskaya does not explain how TransUnion identifies historical subscribers or users, does not offer any TransUnion report of historical subscribers and users, and does not provide any of the data underlying her opinion. She thus provides opinions without underlying reasons.

16

*Second*, Federal Rule of Evidence 702 "requires the trial court to conduct an exacting analysis of the foundations of expert opinions," namely the expert's qualifications, the reliability of the opinions, and their helpfulness, before allowing the opinions to go to the jury. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Indeed, the Court must "conduct a *Daubert*-like critique of the proffered expert's" qualifications and opinions before considering them in connection with a motion for class certification. *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011). "[N]othing in either *Daubert* or the Federal Rules of Evidence Requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), and courts should exclude "imprecise and unspecific" opinions without an adequately explained factual basis." *Frazier*, 387 F.3d at 1266. Verkhovskaya's bald assertion that that TransUnion "provided at least one historical name and address" at some point in time for phone numbers in the Jones Download, Ex. 13 at ¶ 50, flunks that test and must be excluded.

### B. Verkhovskaya's deposition will almost certainly establish additional reasons that her opinions must be excluded.

Braman Hyundai's expert Kostyun established many, many barriers to identifying historical subscribers or users associated with the phone numbers in the Jones Download, and in *Wilson v. Badcock Home Furniture*, the Middle District of Florida explained why Verkhovskaya's reliance on the black box of LexisNexis could not overcome those barriers. So too with her reliance on TransUnion's black box, which Braman Hyundai should be permitted to explore at deposition.

If this Court does not strike Verkhovskaya's report and opinions now, good cause exists for Braman Hyundai to take Verkhovskaya's deposition by April 30 and file a *Daubert* motion 14 days thereafter. While Plaintiff never attempted to create a factual or expert record that could support class certification, in response to the late disclosure of Verkhovskaya's report, Braman

Hyundai immediately pressed for a deposition before the discovery cutoff; and, on its face, Verkhovskaya's report and its opinions cannot pass muster. A deposition and follow-on *Daubert* motion will narrow the issues on class certification and at summary judgment, eliminating the need for trial.

## CONCLUSION

For the foregoing reasons, this Court should strike Verkhovskaya's opinions and refuse to permit her to offer testimony at summary judgment, on class certification issues, or at any trial. In the alternative, this Court should order that she sit for a deposition by April 30, 2019 and permit Braman Hyundai until 14 days after that deposition to file a separate *Daubert* motion addressing her opinions in light of that deposition testimony. And Braman Hyundai should be permitted to supplement any filed motions or memoranda in light of her deposition.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), on March 25, 2019, undersigned counsel conferred with parties who may be affected by the relief sought in this motion in a good faith effort to resolve by agreement the issues raised in this motion. Plaintiff's counsel has advised that he opposes the relief of striking Verkhovskaya's report and opinions but does not oppose an extension of the discovery deadline to permit Braman Hyundai to take Verkhovskaya's deposition.

Dated: March 26, 2019          Respectfully submitted,

By:  *Grace L. Mead*

Grace L. Mead
Florida Bar No. 49896
gmead@stearnsweaver.com
Jenea M. Reed
Florida Bar No. 84599
jreed@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
  Museum Tower, Suite 2200
  150 West Flagler Street
  Miami, Florida  33130
  Telephone:  (305) 789-3200
  Facsimile:   (305) 789-3395

David. S. Leibowitz
Florida Bar No. 529788
davidl@bramanmanagement.com
BRAMAN MANAGEMENT
  ASSOCIATION
  2060 Biscayne Blvd. Floor 2
  Miami, Florida 33137
  Telephone: (305) 576-1889

*Attorneys for Defendant*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March 2019, I filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via CM/ECF.

/s/ Jenea M. Reed
JENEA M. REED

20

**SERVICE LIST**

*Marc Schaevitz v. Braman Hyundai, Inc.*
Case No. 1:17-cv-23890-KMM
United States District Court, Southern District of Florida

Manuel S. Hiraldo
Hiraldo P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com

Andrew J. Shamis
Shamis & Gentile, P.A.
14 NE 1st Avenue, Suite 400
Miami, Florida, 33132
ashamis@shamisgentile.com

Mark J. Dearman
Jason H. Alperstein
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
mdearman@rgrdlaw.com
jalperstein@rgrdlaw.com

*Attorneys for Plaintiff*